***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
1. The dates of the alleged injuries by accident are July 14, 2001, December 23, 2001 and May 22, 2002.
2. In I.C. file # 261201, Plaintiff's average weekly wages were $486.11 per week.
3. Defendants provided an employer-funded disability policy. Pursuant to the medical opinions of Dr. John Y. Karl and Dr. Dion Arthur, Plaintiff was disabled and received disability payments under the employer-funded disability plan for the period from December 31, 2001 to February 25, 2002, in the amount of $1,628.57 for this period. This equates to approximately $203.57 per week.
4. Pursuant to the medical opinion of Dr. Arthur, Plaintiff was also disabled for a period of time from June 3, 2002 to November 11, 2002, and received disability payments under the employer-funded disability plan in the amount of $7,090.00 for this period. This equates to approximately $308.26 per week. Plaintiff contends that his disability for this period began on May 22, 2002.
5. If Plaintiff is found to be entitled to any period of compensable disability under the Workers' Compensation Act, which coincides with either of the two periods for which he received employer-funded disability payments, then pursuant to N.C. Gen. Stat. § 97-42, Defendant shall be entitled to the corresponding weekly credit for any such week that Plaintiff is awarded Workers' Compensation benefits.
6. The issues to be determined from this hearing are as follows:
 a) Whether Plaintiff sustained injuries by accident while in the course and scope of employment with Defendant-Employer?
 b) If so, what, if any, benefits is Plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was thirty-three years of age, having been born October 9, 1970. Plaintiff had a ninth grade education and had obtained a GED; however, Plaintiff failed the Armed Services Vocational Aptitude Battery (ASVAB) entrance examination to the military on four occasions.
2. Plaintiff began his employment with Defendant-Employer on March 8, 2001, as a stock handler and later worked in the assembly department. As a stock handler, Plaintiff was required to repetitively move forty-pound boxes. Three different lines fed plastic deodorant caps into boxes, which as they were filled, had to be taped and moved to a pallet. These tasks were repeated over and over. As boxes were filled, another box was placed in position for filling.
3. Most of Plaintiff's previous work experience had been in the construction industry, where he performed concrete work and built ceiling joists. Plaintiff had also attempted work in the knitting department of the textile industry, but was unable to perform in that complex type of employment. Prior to his employment with Defendant-Employer, Plaintiff had never been treated for low back pain and denied ever having low back pain.
4. Plaintiff's job with Defendant-Employer involved heavy manual labor. Plaintiff testified that the job at Owens was probably the hardest labor job he has ever had and anybody that worked it for two weeks would be hurting and sore. Plaintiff's supervisor, Paul Grupe also testified that the work was heavy and that employees frequently complained of sore backs.
5. On May 11, 2001, approximately one month after his employment began with Defendant-Employer, Plaintiff sought treatment for a sore back at First Choice Medical Group. At that time Plaintiff reported that his pain had increased to a severe level. Plaintiff testified that the May 2001 back pain developed gradually. He received treatment from Dr. John Y. Karl and missed no time from work as a result of this back pain.
6. On July 14, 2001, Plaintiff was lifting a Gaylord that weighed approximately forty pounds, when he "felt a sharp pain in [his] lower back" on his right side above his hip and below his beltline. He testified that he immediately told Mr. Grupe that he had hurt his back. This claim was assigned I.C. File No. 257248.
7. Mr. Grupe testified that while he had no specific recollection of Plaintiff having told him of a lifting incident and injury to his low back, Plaintiff might have told him and he simply did not realize it was serious. Defendant-Employer did not file a Form 19 Employers Report of Injury at the time of this incident and Plaintiff did not complete an employee accident report.
8. On July 16, 2001, Plaintiff sought treatment from Dr. Karl with complaints of low back pain radiating down into his left leg and foot for a period of two to three days. Dr. Karl indicated that Plaintiff attributed the pain to picking up a forty-pound box, two to three days prior. Plaintiff continued working and continued conservative treatment with Dr. Karl over the next month and a half. After Dr. Karl released Plaintiff from his care on September 6, 2001, Plaintiff had nearly perfect attendance at work until after his December 23, 2001 injury.
9. In September 2001, Defendant-Employer assigned Plaintiff a job, with much lighter duties, working with a computer. When Plaintiff was unable to do the B-2 computer job, he told his supervisor that he was incapable of doing that job and went back to a heavy labor position. Mr. Grupe reported that Plaintiff appeared to be trying to do a decent job, but lacked the ability to "absorb information, retain and use on the job." Plaintiff requested, and Mr. Grupe recommended that Plaintiff return to his former job.
10. Plaintiff saw Dr. Karl for treatment due to a sore back on December 17, 2001. Dr. Karl did not relate Plaintiff's complaints of back pain on December 17, 2001 to his July 14, 2001 injury because it involved a different part of the body — the left buttock and left leg. Dr. Karl ordered an MRI to determine the nature and extent of Plaintiff's back pain. This MRI was performed on December 20, 2001, and revealed degenerative disk disease and multiple herniations at L1-2, L4-5 and L5-S1.
11. On December 23, 2001, Plaintiff suffered another injury while lifting a forty-pound box on the same machine that caused his July 14, 2001 injury. Plaintiff described this incident as "just the same accident, the same place right there in my back again." Plaintiff testified that he was performing "[j]ust the same kind of lifting" of a forty-pound Gaylord full of empty deodorant bottles onto a pallet as he was doing when he first injured his back on July 14, 2001. He testified that this pain felt "[l]ike a sharp, hot knife in my back above my hip," just in the same spot as on July 14, 2001. He sought treatment from Dr. Karl on December 26, 2001.
12. Plaintiff again reported his injury to his supervisor, but this time the supervisor filled out an accident report. Plaintiff had previously filed a complaint with his union representative about Defendant-Employer's failure to file accident reports. The Supervisor's Accident Report indicated that Plaintiff's injury occurred at work while Plaintiff was "stacking finished goods boxes on line 61." Defendant-Employer filed a Form 19 employers report of injury with the Commission on the December 23, 2001. Plaintiff filed a Form 18 claim of injury on August 22, 2003, to report the December 23, 2001 incident to the Industrial Commission. The claim was assigned I.C. File No. 234355.
13. Based upon his December 20, 2001 MRI findings and Plaintiff's level of pain after his second injury on December 23, 2001, Dr. Karl referred Plaintiff to Dr. Dion Arthur, who is an orthopaedic surgeon. Dr. Arthur examined Plaintiff on January 10, 2002, and recommended physical therapy and epidural injections to relieve Plaintiff's back pain. Dr. Arthur took Plaintiff out of work. Plaintiff took a medical leave of absence from work from December 31, 2001, until February 25, 2002, and received short-term disability benefits from an employer-funded plan. Even though there is confusion about whether Plaintiff related his December 23, 2001 injury to his work on his disability application, and despite Plaintiff's failure to appeal from the Deputy Commissioner's finding that he did not sustain a new injury on December 23, 2001, the Full Commission finds that Plaintiff sustained a compensable injury on December 23, 2001.
14. By February 21, 2002, Plaintiff reported that he was symptom free, he had a normal orthopaedic and neurological examination, and he stated that he felt strong and wanted to return to work. Dr. Arthur agreed that based on Plaintiff's statements and his physical examination, Plaintiff could return to full-time, regular duty with no restrictions on February 22, 2002. After Plaintiff's return to unrestricted work on February 25, 2002, he missed little, if any, time from work until May 22, 2002. His supervisors did not complain about Plaintiff's ability to perform his work during this period of time.
15. On May 22, 2002, Plaintiff suffered another injury to his back while working for Defendant-Employer. Plaintiff was lifting a large, four-feet by four-feet box, which was three or four feet deep, and weighed ninety to one hundred pounds. Plaintiff was moving the box onto a scale with the assistance of co-employee Chris Johnson, when he felt an immediate, stabbing pain in his low back of such severity that the supervisor, Ken Long, was summoned and Plaintiff was taken directly for emergency treatment. The pain that Plaintiff experienced at this time was "five times worse" than any pain that he had experienced before and it occurred in the same area of his back as his July 14, 2001, and December 23, 2001 injuries.
16. Plaintiff attempted to return to light-duty work immediately following the May 22, 2002 incident, but was unable to remain at work because of the severity of his pain. He completed a report of this injury on May 22, 2002. Defendant-Employer also filed a Form 19 Employer's Report of Injury with the Commission regarding Plaintiff's third injury. This claim was assigned I.C. File No. 261201.
17. As a result of the May 22, 2002 injury, Plaintiff returned to Dr. Karl and Dr. Arthur for treatment. Dr. Karl noted in his May 26, 2002 examination that Plaintiff had "severe back pain." On May 30, 2002, Dr. Arthur also described Plaintiff's back pain as "severe." Dr. Arthur recommended surgery to alleviate this pain and Plaintiff consented. On June 11, 2002, Dr. Arthur performed a lateral decompression, bilateral hemilaminectomy at the L5-S1 and L4 levels.
18. Dr. Arthur released Plaintiff to return to work with restrictions on October 5, 2002. Plaintiff reached maximum medical improvement from his May 22, 2002 injury and surgery on or about November 21, 2002. He was given permanent restrictions of not lifting more than fifteen pounds, no bending from the waist, and no twisting, stooping or straining. Defendant-Employer had no work available within those restrictions, so Plaintiff has not worked since his release. He has not been terminated from employment with Defendant-Employer.
19. On May 22, 2002, Plaintiff sustained an injury to his back arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer. Dr. Arthur was of the opinion that the May 22, 2002 lifting incident was an aggravation of a pre-existing condition.
20. Dr. Arthur opined and the Full Commission finds that the May 22, 2002 incident materially and significantly aggravated any pre-existing back condition from which Plaintiff suffered, and that the May 22, 2002 exacerbation ultimately led to Plaintiff's need for surgery on June 11, 2002 and his resulting disability.
21. Based on the greater weight of the evidence, Plaintiff suffered an injury arising out of and in the course of his employment on July 14, 2001, December 23, 2001 and May 22, 2002, as a direct result of a specific traumatic incident of the work assigned by Defendant-Employer. The July 14, 2001 incident either caused the ruptured disc discovered on a subsequent MRI performed on December 20, 2001 or aggravated an asymptomatic degenerative condition. Dr. Arthur was of the opinion that the July 14, 2001 incident would have caused the ruptured discs. It was also Dr. Arthur's opinion that ruptured discs can be symptomatic or asymptomatic and can vary from symptomatic to being asymptomatic. As of the date of Plaintiff's MRI he was still capable of working.
22. Plaintiff's symptoms related to his December 23, 2001 injury and his July 14, 2001 injury had resolved by February 21, 2002. Following Plaintiff's release to return to work without restrictions on February 22, 2002, Plaintiff continued to work despite his multiple herniated discs in his back until May 22, 2002, when he had another work-related back injury. Defendants do not dispute the occurrence of Plaintiff's May 22, 2002 back injury. They contend, however, that Plaintiff's prior condition of degenerative disc disease was already disabling and therefore his claim is not compensable as an aggravation of a pre-existing condition.
23. Plaintiff was performing full-time, unrestricted heavy labor and earning full wages when he suffered an injury on May 22, 2002. Although Dr. Arthur had diagnosed Plaintiff with degenerative disc disease on January 10, 2002, Plaintiff's degenerative disc disease was non-disabling and had given him little problem from February 21, 2002 until May 22, 2002, when he suffered another injury.
24. Defendants further contend that Plaintiff was going to require surgery for his back anyway at some point, so his work with Defendant-Employer did not truly aggravate the underlying condition more than any other event would have. Dr. Arthur was of the opinion and the Full Commission so finds that Plaintiff was not disabled from working as of February 21, 2002, and he did not believe that Plaintiff's condition as revealed by the December 20, 2001 MRI required surgery. He also opined and the Full Commission finds that the May 22, 2002 lifting incident definitely aggravated Plaintiff's pre-existing back condition and caused such intractable pain that Plaintiff could no longer work and required surgery. Dr. Arthur determined that Plaintiff was symptom free and could fully perform all of the functional tests given to him on February 21, 2002. At that time Dr. Arthur released Plaintiff to return to unrestricted, full-time work.
25. After treatment for his May 22, 2002 injury, Plaintiff was medically able to return to light-duty work on October 5, 2002, but Defendant-Employer did not have any work available within his restrictions. Plaintiff reached maximum medical improvement from his work-related injury on November 21, 2002, with significant restrictions of no lifting greater than fifteen pounds, no waist bending, twisting or stooping. Defendant-Employer has not terminated Plaintiff, but does not have work for Plaintiff within his restrictions. Plaintiff has looked for work within his restrictions, but has been unsuccessful. Defendants have refused to provide him with vocational assistance to aid in his efforts. Plaintiff's efforts to find suitable employment have been reasonable. As a result of his May 22, 2002 injury, Plaintiff has been totally disabled from May 22, 2002 through the date of the hearing before the Deputy Commissioner and continuing.
26. Ernest Jones, BCDA, CDMA, testified by deposition in this matter as an expert in the field of vocational rehabilitation. Mr. Jones has worked for the State Vocational Rehabilitation Department since 1970.
27. It was Mr. Jones's opinion that Plaintiff is unemployable, without retraining, because of his light-duty, exertional restrictions, his limited education and his lack of transferable skills from the heavy manual labor he has performed in the past. Mr. Jones further opined that Plaintiff's unassisted job search was totally in the wrong direction inasmuch as he was looking for jobs for which he was not qualified or capable of performing. Plaintiff sought heavy labor jobs because this was the only type of work he knew. Defendant-Employer's assessment that Plaintiff lacked the capacity to absorb, retain and use knowledge in the operation of a B-2 computer; Plaintiff's difficulty in learning to operate equipment in a textile mill; and his failed attempts to pass the military ASVAB exam four times lends credence to Mr. Jones's opinion.
28. The greater weight of the evidence establishes that Plaintiff did report the July 14, 2001 lifting incident and back injury to his supervisor, Paul Grupe, immediately after he injured his back as required under N.C. Gen. Stat. § 97-22. Plaintiff's failure to give written notice is excused, as he was aware that Defendant-Employer had actual knowledge of the injury. Defendant-Employer has failed to prove they were prejudiced by the absence of written notice. Plaintiff did not miss more than one or two, if any, days from work due solely to this injury and is not entitled to indemnity compensation for the injury.
29. As a result of his December 23, 2001 injury, Plaintiff was temporarily totally disabled from work from December 31, 2001 to February 22, 2002, and is entitled to compensation for this period, subject to Defendants' credit for short-term disability paid to Plaintiff from an employer-funded policy.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained three separate compensable injuries arising out of and in the course of his employment with Defendant-Employer as a direct result of specific traumatic incidents. These incidents occurred on July 14, 2001, December 23, 2001 and May 22, 2002. N.C. Gen. Stat. §97-2(6).
2. Plaintiff's July 14, 2001 injury either caused discs herniations at L1-2, L4-5 and L5-S1, or aggravated pre-existing degenerative disc disease at these levels. Plaintiff's disc condition was non-disabling. Plaintiff's second work-related injury to his back on December 23, 2001, caused additional back pain in the same area of his back as the July 14, 2001 injury. As a result of his December 23, 2001 injury and aggravation of his pre-existing back condition, Plaintiff was taken out of work and is entitled to temporary total disability compensation from December 31, 2001 through February 22, 2002, subject to Defendants' credit for the short-term disability paid to Plaintiff during the relevant period.
3. As a result of his May 22, 2002 injury, Plaintiff was incapable of working in any capacity from May 23, 2002 through October 5, 2002, and has been unable to find suitable employment within his medical restrictions and due to his educational and vocational limitations. Plaintiff has made reasonable efforts to find suitable employment. Plaintiff is therefore entitled to temporary total disability from May 23, 2002, and continuing until further order of the Industrial Commission.
4. Plaintiff is entitled to have Defendants provide all medical compensation arising from these injuries for so long as such treatment is reasonably required.
5. Plaintiff's average weekly wages at the time of the incidents in this matter was such that it yielded a compensation rate of $324.09 per week.
6. Defendant-Employer had actual notice of Plaintiff's July 14, 2001 injury. Plaintiff has provided a reasonable excuse for his failure to give written notice within thirty days after the injury and Defendants have not been prejudiced by Plaintiff's failure to give written notice. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter approved and Defendants' credit for short-term disability paid to Plaintiff, Defendants shall pay compensation to Plaintiff for total disability at the rate of $324.09 per week from December 31, 2001 to February 22, 2002 and from May 23, 2002, and continuing until further order of the Commission. The accrued compensation shall be paid in a lump.
2. Defendants shall pay for all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injuries on July 14, 2001, December 23, 2001 and May 22, 2002, when bills for same have been submitted and approved according to Industrial Commission procedure, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen Plaintiff's period of disability.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded to Plaintiff is approved for Plaintiff's counsel. This fee shall be deducted from the compensation awarded to Plaintiff and paid directly to counsel for Plaintiff, as follows: (1) twenty-five percent of attorney fees that have accrued shall be paid in one lump sum; and (2) thereafter, every fourth check from the compensation due Plaintiff shall be deducted and paid directly to Plaintiff's attorney.
4. Defendants shall receive a credit for the employer-funded disability compensation Plaintiff received from December 31, 2001 to February 25, 2002, and from June 3, 2002 to November 11, 2002.
5. Defendants shall pay the costs of this action.
This the 14th day of December 2005.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
 S/ ______________________ PAMELA T. YOUNG COMMISSIONER